## THE INDEPENDENT (two cases).

(District Court, D. Rhode Island. February 7, 1902.)

Nos. 1,036, 1,087.

SALVAGE—EXTINGUISHING FIRE IN BARGE—AMOUNT OF AWARD.

A wooden barge, valued at from $40,000 to $50,000, laden with a cargo of coal worth about $10,000, took fire while lying in harbor, near a pier. There was no fire boat in the harbor, and the barge could not use her own fire apparatus, owing to the location of the fire. In response to her signal, four tugs, which were all that were within reach, each fully equipped with fire apparatus, came to her assistance, and rendered prompt and efficient service. After three or four hours work, the barge was scuttled on orders from the master of one of the tugs, and lay aground, with a free board of five to six feet amidships at high tide. The tugs continued to throw water into her for some 30 hours before the fire was extinguished, and then two of them pumped her out, one of them working for over three days in all. Through their efforts there was a saving of damage on barge and cargo of from $20,000 to $25,000. *Held,* that they were entitled to an award for salvage services of $4,000.[1]

In Admiralty. Suits to recover for salvage services.

E. D. Barrett, for A. M. Miles.
Matteson & Healy, for Providence Steamboat Co.
Peter S. Carter, for the Independent.

BROWN, District Judge. These are consolidated libels for salvage services rendered by the steam tugs Carrie A. Ramsey, Gaspee, and Reliance, owned by the Providence Steamboat Company, and by the steam tug Mars, owned by Bartlett & Shepard, of Philadelphia, Pa., in extinguishing a fire on the barge Independent. The Independent, a wooden barge 252 feet long, 52 feet beam, and 24 feet draught, with a cargo of 3,957 tons of bituminous coal, was anchored in the Providence Harbor, on the easterly side of the channel, nearly abreast of the Wilkesbarre Pier. About 8:30 a. m., on Thursday, March 7, 1901, fire broke out on the barge, and flames came up the forward companion way. The master blew the steam whistle, and put his flag in the rigging, Union down. The tug Carrie A. Ramsey, Walter E. Sutton master, came immediately in response to the signals, and within 10 minutes, at 8:40 a. m., was alongside, with her fire hose already coupled on, and almost immediately had a stream of water down the forward companion way. Though the barge was provided with engine and pumps, the forward part of the barge near the engine room was so full of smoke and flame that it was impossible to use them, and the barge herself was practically powerless to fight the fire. The Gaspee

---

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

and the Mars arrived at about 10 o'clock, and the Reliance some time later, probably not far from 10:30. Sutton, master of the Ramsey, who had taken charge of extinguishing the fire, found that the efforts of the four tugs with five or six streams of water were insufficient, and determined that it was necessary to scuttle the barge. He sent for additional hose, and for a carpenter, who arrived at about 11 o'clock, and immediately began to cut a hole in the side. Water began to run in through this hole at about 11:30, and the carpenter worked until about 1 o'clock, when the tide water was entering the side freely. The barge, drawing some 24 feet of water, was aground the greater part of the tide. She had a free board of five or six feet amidships at high tide, and considerably more than this at low tide. High water was at 9:20 a. m. The cargo of coal did not catch fire, and this was probably prevented by the scuttling of the barge. The tugs continued to throw water into the barge during the remainder of the day and night of March 7th, and on the morning of the 8th. At about 1:30 p. m., on March 8th, they had the fire practically under control, and it was probably extinguished some time that afternoon, though there is a controversy as to the exact time. On Friday afternoon the barge was pumped practically full, and the water was two or three feet deep on her decks. Shortly after 5 o'clock the Reliance started to pump out the barge, and the Gaspee began soon afterwards. The Gaspee and Reliance continued pumping until 4 a. m., March 9th, when the Gaspee ceased, the Reliance continuing until 3:30 a. m., March 10th. The barge's own pumps had been rigged in the meantime, and she was then able to take care of herself. There is some evidence that the barge was in danger of straining, though this is in dispute.

The claimant, to reduce the salvage award, criticizes in about every particular the conduct of the salvors, and makes charges of bad faith upon the part of the Providence Steamboat Company, which, in my opinion, are entirely unfounded and unjustified. Nor do I consider that these contentions need to be dealt with in any detail.

The main contention is that the efforts of the tugs were useless; that the fire was actually extinguished by the scuttling of the barge; and that this might have been done by the master and crew of the barge without assistance. While it is true that the scuttling of the barge did undoubtedly protect the cargo, I am of the opinion that the service rendered by these tugs was an important and valuable service to the barge. Despite the efforts of the tugs, the damage to the barge is variously estimated at from $8,000 to $12,000, and I think, in view of the fact that the barge was absolutely powerless and could not use her own engine and pumps, that without the arrival of the Ramsey, and the subsequent arrival of the other tugs, it is highly probable that the barge would have been burned to the water's edge. During the early part of the fire the tide was falling, increasing the free board of the barge, which was between 5 and 6 feet amidships, 12 or 15 feet at the bow, and about 10 feet at the stern, at high water. Her free board was considerably more than this during a large part of the fire.

It is contended that the fire burned itself out without the assistance of the tugs; but I think that the only reasonable conclusion is that the fire was prevented from extending to and destroying the deck and

upper works of the barge by the efforts of the salvors. These tugs comprised all the available tugs, there being no public fire boats in the harbor. They were well equipped with fire hose; their services were rendered promptly and diligently; and Sutton, master of the Ramsey, who took charge, advised and ordered the immediate scuttling of the barge, and, by procuring a carpenter without delay, got a hole through her very much quicker than would have been the case had the master and crew of the barge undertaken it. This was important, as the tide was dropping, and the barge was aground.

In considering what was the value of the property saved to the owners, I encounter great disparity in evidence as to the value of the barge before the fire. I do not find it necessary to determine exactly the value of the barge upon this disputed evidence. It is sufficient, for the purposes of this case, to say that I am satisfied that she was worth anywhere from $40,000 to $50,000, and a variation of a few thousand dollars one way or the other would not affect substantially the amount which seems to me to be a fair compensation and reward to these salvors. Her cargo was sold alongside, after the fire, for $10,511.22. Upon the present argument, it does not seem necessary to consider the freight as a separate item, and we may take the cargo itself, as enhanced in value by carriage from Norfolk, Va., to Providence. I think, however, that the cargo of this barge was not in very serious peril. It was saved by the scuttling, at a place near the Wilkesbarre Pier, where it could be easily handled, even with the barge sunk, and salvage on 25 per cent. would be probably an outside figure.

No evidence has been called to my attention as to what would have been the value of the barge had she burned to the water's edge, and I have difficulty, therefore, in determining, or even approximating, the actual amount which was saved to the barge owners through the efforts of the tugs. Assuming, however, that her actual damage was $10,000, it would seem that, at the same rate, it could not have been far from $30,000 or $35,000 but for the efforts of the salvors. I think it fair to say that these barge owners were saved $20,000 to $25,000 by the efforts of the salvors. This is a rough estimate; but as I do not propose to award a definite percentage, and as the evidence is insufficient to enable me to do so, it is sufficient for the purposes of this case.

Considering, on the one hand, that this service was entirely without risk to the salvors, or without any serious inconvenience; on the other hand, that there was no public fire boat; that these tugs were equipped for fire service; the prompt action of Sutton, master of the Ramsey; and that there has been a considerable saving of valuable property,— I award the sum of $4,000 for total salvage.

As to the apportionment of the salvage among the salvors, I shall ask for further assistance of counsel. I am of the opinion that Walter E. Sutton is entitled as master to rather a larger portion than the other masters, and request counsel to agree or to submit proofs as to a proper apportionment.